IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| LINDA L. DIETZ, | : | BANKRUPTCY NO.: 5-05 bk-55060 |
| DEBTOR | : | |
| WILLIAM G. SCHWAB, TRUSTEE FOR THE ESTATE OF LINDA L. DIETZ | : | |
| PLAINTIFF | : | |
| vs. | : | {**Nature of Proceeding**: Debtor's Motion for Sanctions Pursuant to F.B.R. 9011 (Doc. No. 3)} |
| LINDA L. DIETZ | : | |
| DEFENDANT | : | ADVERSARY NO.: 5-06-ap-50095 |

# OPINION[1]

Before the Court is Debtor's Motion for Sanctions under Bankruptcy Rule 9011 against William G. Schwab, Trustee, and Michelle Wolfe, Esquire. The Motion is based on the Trustee's Complaint to Revoke Discharge Under Section 727 filed by the Trustee's attorney.

## I. Background

Debtor filed this Chapter 7 bankruptcy September 4, 2005. William Schwab was appointed as Trustee. William Schwab and William G. Schwab & Associates were appointed counsel for the Trustee. See Doc. No. 8 to Bankruptcy Case 5-05-bk-55060, *Order Authorizing Employment of Attorney for Trustee*. Debtor's Schedule A listed real property located at 75 Beaver Street, Lehighton, at a value of $95,000. The Trustee alleges that after the October 26,

---

[1] Drafted with the assistance of Kathryn F. Evans, Law Clerk.

[m:\users\cathy\...\opinions\5-06-ap-50095_Dietz.wpd]

2005 § 341 Meeting of Creditors, he requested a realtor[2] to view the property at 75 Beaver Street. The Trustee alleges he was advised by the realtor on December 6, 2005 that the property had a potential value of $125,000.[3] Trustee further alleges on December 21, 2005, the realtor he had contacted with regard to the property informed him the Debtor was not allowing him to review the property. Interrogatory Response #2, Doc. No. 17. The deadline to object to Debtor's discharge was December 25, 2005. On December 30, 2005, the discharge was granted.

On March 3, 2005, over two months later, the attorney[4] on behalf of William Schwab the Trustee, filed a *Complaint to Revoke Discharge Under Section 727* on grounds the Debtor undervalued the property and concealed the true value of the property by refusing to cooperate with the Trustee's realtor and exposing the property to the market. *See* Doc. No. 1 on Adversary docket 5-06-ap-50095. In response, on March 8, 2006, Debtor served the Trustee via certified mail, return receipt requested, with a draft of a motion for sanctions under Rule 9011, and a letter demanding that the revocation Complaint be dismissed by March 28, 2006. The Trustee did not respond or revoke the Complaint prior to that deadline. The Complaint to revoke Debtor's discharge was withdrawn by the Trustee on April 3, 2006.

## II. Sanctions Against Michelle Wolfe, as Signatory to the Complaint

The primary issue before the Court is whether the actions of the Trustee's attorney in

---

[2] No motion to employ a real estate agent was filed at any time prior to the Complaint to revoke discharge in this case. See adversary docket 5-06-ap-50095.

[3] The Trustee has not proven to the Court with any admissible evidence that the value of the house is actually $125,000. The only evidence before the Court of the property's value is the Debtor's valuation given on her Schedule A, which was sworn to under penalty of perjury.

[4] Michelle Wolfe is an Associate with William G. Schwab and Associates, the firm appointed to represent the Trustee.

filing this adversary under § 727(d)(1)[5], were so unwarranted as to be sanctionable under Rule 9011. The Third Circuit has cautioned lower courts, stating "as a general practice and policy, this Court is very reluctant to impose punitive sanctions upon counsel and refrains from exercising the Court's authority under Bankruptcy Rule 9011." *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992).

Bankruptcy Rule 9011 is similar to Rule 11 of the Federal Rules of Civil Procedure and provides in pertinent part:

> By presenting to the court . . . a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ---(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonably opportunity for further investigation or discovery . . . .

Fed. R. Bank. P. 9011

The text of Rule 9011 suggests the primary inquiry pivots on the knowledge, intentions, and inquiries made by the person filing the pleading, in this case the attorney who was the signatory to the complaint. *See* Fed. R. Bank. P. 9011. The Supreme Court has held "Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 544, 111 S.Ct. 922, 934-35 (1991).

Thus, the issue boils down to whether the decision by the attorney to file the instant

---

[5] Furthermore, during oral argument, the Trustee's counsel focused on § 727(d)(1) arguing that in concealing the residence from the realtor, the Debtor was committing fraud. Audio record of 5/5/2006 at 11:22 a.m.

action was objectively reasonable when taking into consideration her knowledge, intentions, and the inquiries she made into the Complaint prior to filing it. Obviously, a key witness in determining this would be the signing attorney, for who better to testify regarding the knowledge, intentions, and inquiries she made prior to filing the Complaint than the signatory attorney. Here, the attorney failed to testify in her own defense. With regard to failing to testify in your own defense, the Supreme Court has held in civil cases "the Fifth Amendment does not forbid adverse inferences against the parties . . . when they refused to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

The evidence before the Court is that 1) a realtor, not employed by court order, informed the Trustee's office that Debtor's home was worth around $125,000, and 3) the Trustee's office being told by the realtor that the Debtor was not being cooperative in that she failed to return the realtor's phone calls. The Court is careful to note that this evidence is not being considered for the truth of the matter asserted, i.e., that the Debtor was in fact uncooperative, but rather for the limited purpose of showing the effect on the hearer (the Trustee). *U.S. v. Thompson*, 279 F.3d 1043, 1047, 350 U.S. App. D.C. 60, 64 (D.C. Cir. 2002). Because the Trustee's attorney, and the realtor failed to testify, this testimony is the sole evidence before the Court regarding her knowledge and the inquiries she made prior to filing the Complaint to revoke Debtor's discharge. As such, the Court must determine whether this evidence alone provided an objectively reasonable basis to file a complaint for revocation of discharge.

Revocation of discharge is based primarily on 11 U.S.C. § 727(d) which provides:

(d) on request of the Trustee, a Creditor, or the United States Trustee and after notice and a hearing , the court shall revoke a Discharge granted under subsection

>    (a) of this section if-
>      (1) such discharge was obtained through fraud of the Debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>      (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or
>      (3) the debtor committed an act specified in subsection (a)(6) of this section.

11 U.S.C. § 727(d) (2005, pre-BAPCPA)

Revocation is an extraordinary remedy. *In re Bowman,* 173 B.R. 922, 924 (9th Cir. BAP 1994), and *Johnson v. Chester Housing Authority (In re Johnson),* 250 B.R. 521, 527 (Bankr. E.D.Pa. 2000). Revocation should be strictly construed against the objector and liberally in favor of the debtor. *In re Adeeb,* 787 F.2d 1338, 1342 (9th Cir. 1986). Revocation must be proven by the movant by a preponderance of the evidence. *In re Lokay*, 269 B.R. 132, 138 (W.D.Pa. 2001) (citing *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (9th Cir. BAP 1994).

In the answer to the sanction motion, the Trustee's lawyer argues the concealment and failure to cooperate with agents of the Trustee was a dereliction of Debtor's duties under § 521(a), giving his counsel reasonable and adequate grounds for filing a complaint seeking to revoke discharge pursuant to *In re James*, 77 B.R. 174 (Bankr. S.D. Ohio 1987); and *In re McDonald*, 25 B.R. 186 (Bankr. N.D. Ohio, 1982). See Doc. No. 11, *Trustee's Answer to Debtor's Motion for Sanctions Pursuant to Rule 9011* at ¶ 9.

There are two problems with the above argument. First, looking to the text of § 727, dereliction of a debtor's duties under § 521 is not one of the three basis upon which revocation of a discharge can be based. This is especially problematic in light of the fact that revocation of

discharge is strictly construed and all inferences given to the debtor. *In re Adeeb,* 787 F.2d at 1342. The second concern is, even assuming dereliction of § 521 duties was a legitimate basis for revocation, there is no admissible evidence before the Court suggesting Debtor was in fact derelict in fulfilling her § 521 duties. The Court assumes the duty in question is the duty under § 521(a)(3) to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3) (2005, pre-BAPCA). There is no admissible evidence before the Court that Debtor actually refused to allow the Trustee's realtor into her house. Furthermore, even if the Debtor did refuse to allow this realtor into her home, the Court is reluctant to find this to be a dereliction of Debtor's § 521 duties. It is a stretch to interpret § 521(a)(3) to require a debtor, not facing a motion to compel, to allow a realtor who is not employed by court order, to inspect her property. To find that all debtors must allow random professionals purporting to be the Trustee's agents to inspect their property at anytime would be an absurd requirement. As such, the Court finds that Debtor's failure to open her home to the realtor was not a dereliction of her § 521 duties.

Furthermore, the Court finds that an objectively reasonable response to a debtor refusing to allow a realtor into her home would be to contact debtor's counsel to discuss the situation, or at the very least, to file a motion to compel. Trustee admits in his answer to the sanction motion that he never had any direct contact with either the Debtor, or her attorney, regarding the realtor, prior to filing this motion for revocation. See Doc. No. 11, *Trustee's Answer* at ¶ 10. As such, the Court finds that filing a complaint to revoke discharge based solely on the fact that an unappointed professional told him Debtor was not returning phone calls is objectively unreasonable under the circumstances.

Finally, the Court deems it necessary to address the Trustee's attorney's contention that its actions were warranted pursuant to the authority of *In re James*, 77 B.R. 174 (Bankr. S.D. Ohio 1987); and *In re McDonald*, 25 B.R. 186 (Bankr. N.D. Ohio 1982). Both cases were premised on violations of debtor's duties under § 521, however, as established above, there is not even an iota of admissible evidence suggesting Debtor abrogated her duties under § 521 by refusing to permit a realtor, who had yet to be appointed by the Court, into her home to inspect it. The Trustee's counsel also argues the Complaint was warranted under the authority of *In re Bower*, 291 B.R. 127, 130 (Bankr. 2003), *In re Roland,* 317 B.R. 402, 416 (Bankr. C.D. Cal. 2004), and other cases suggesting that undervaluation of assets would be a valid basis upon which to file a revocation of discharge. However, again, there is not an iota of admissible evidence before the Court that Debtor undervalued her home, nor is there any admissible evidence before the Court showing the Trustee's attorney had knowledge and/or a belief the Debtor undervalued the home, as the Trustee's attorney did not testify during the hearing. These cases also fail to provide a reasonable basis for filing a revocation of discharge.

The Court finds the Trustee's attorney's conduct in filing this Complaint for a revocation of discharge was objectively unreasonable under the circumstances in that its filing was not warranted under existing law, thus constituting a violation of Rule 9011(b)(2).

### III. Sanctions Against William Schwab As Trustee

In addition to seeking sanctions against the complaint's signatory, Debtor also seeks sanctions against the Trustee, William Schwab. The text of Rule 9011 itself states that sanctions may be imposed upon "attorneys, law firms, or *parties* that have violated subdivision(b) or *are responsible for the violation.*" Fed. R. Bankr. P. 9011(c)(emphasis added). Imposition of

sanctions against an attorney does not preclude imposition of sanctions against the client. 10 Collier on Bankruptcy, ¶ 9011.08[3][a] at 9011-23 (15th ed. rev'd)(citing *Collins v. Walden*, 834 F.2d 961 (11th Cir. 1987). Sanctions are warranted when the client was the catalyst responsible for the filing of the offending document. *Chevron v. Hand*, 763 F.2d 1184, 1187 (10th Cir. 1985). However, because the Court has determined that sanctions in this case were warranted under Rule 9011(b)(2), in that the filing was unwarranted by existing law, monetary sanctions against the Trustee are impermissible. Fed. R. Bankr. P. 9011(c)(2)(A).

Again, the Court finds as consequential the fact that neither the Trustee nor his attorney testified in their own defense at trial. As stated above, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter,* 425 U.S. at 318. There is no admissible, probative evidence before the Court suggesting that the Trustee was the catalyst behind the filing of this motion. Therefore, the Trustee will not be sanctioned under Rule 9011 in this case.

**IV. Sanctions**

With regard to the actual sanctions, Rule 9011(c)(2) states:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by other similarly situated. . . . the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c)(2)

The Court finds it appropriate in the instant case to award the Debtor $2,299.00, the attorney's fees incurred defending the Complaint to revoke discharge. These fees were incurred as a direct result of having to defend Michelle Wolfe's offending Complaint. The Court finds that limiting the sanction to the attorney's fees incurred in litigating the Complaint is minimally sufficient to deter the Trustee's attorney from filing unwarranted complaints in the future.

An Order will follow.

Date: August 2, 2006

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*